IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**

JOSÉ M. TORRES-DÍAZ,

    **Defendant.**

**Criminal No.** 23-410 (FAB)

## OPINION AND ORDER

BESOSA, Senior District Judge.

    Before the Court are several pre-trial motions by both the defendant José M. Torres-Díaz ("Torres") and the United States, including:  (1) a motion *in limine* by the United States to preclude a justification defense (Docket No. 60); (2) a motion *in limine* by the United States to introduce Federal Rule of Evidence 404(b) evidence ("Rule 404(b)") (Docket No. 74); (3) an omnibus motion *in limine* by the defendant (Docket No. 76); (4) a motion *in limine* by the defendant to exclude irrelevant and unfairly prejudicial evidence (Docket No. 82); (5) defendant's Rule 16 notice of objections and motion to limit expert testimony (Docket No. 83); (6) a motion *in limine* by the United States regarding improper arguments (Docket No. 86); and (7) a motion by the United States regarding defense arguments and question on absence of investigative techniques (Docket No. 87.)

For the reasons set forth below, the United States' motion *in limine* to preclude a justification defense (Docket No. 60) is **DENIED**; the United States' motion to introduce 404(b) evidence (Docket No. 74) is **GRANTED**; defendant's omnibus motion *in limine* (Docket No. 76) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**; defendant's motion *in limine* to exclude irrelevant and unfairly prejudicial evidence (Docket No. 82) is **GRANTED IN PART** and **DENIED IN PART**; defendant's motion requesting compliance with Rule 16 concerning expert testimony (Docket No. 83) is **DENIED AS MOOT**; the United States' motion *in limine* regarding improper arguments (Docket No. 86) is **GRANTED**; and  the United States' motion *in limine* to preclude questions about the absence of investigative tools (Docket No. 87) is **DENIED WITHOUT PREJUDICE**.

## I.  Background

On October 23, 2023, at approximately 12:00 a.m., officers of the Puerto Rico Police Bureau ("PRPB") responded to a report of gunfire near La Casita Bar in Juana Díaz, Puerto Rico.  (Docket No. 60 at p. 1; Docket No. 71-1.)  When PRPB officers arrived, there was a Polaris sport vehicle on the side of the road and numerous shell casings were on the road.  Id.  The driver of the Polaris was deceased and three other individuals in the Polaris behind the front passenger seat, including defendant Torres, were injured.  Id.  Torres, who was sitting behind the front passenger

seat, was shot in the shoulder; the front passenger was shot in the upper torso and the rear driver's side passenger was shot in the head.  (Docket No. 71 at p. 5.)

According to PRPB officers, there were three firearms found around Torres:  (1) a Glock, .45 caliber firearm with serial number FXZ599 on Torres' seat; (2) a Glock, 9mm Luger caliber firearm with serial number BTDR920 in the legroom area of Torres' seat; and (3) a Glock, .40 caliber firearm with serial number LEW246 at Torres' immediate left.  (Docket No. 60 at p. 2.)  Torres told the police that he had arrived at La Casita Bar in a Mitsubishi Montero before the shooting started and that he had discharged a firearm after individuals in a grey car had shot at the Polaris in which he was a passenger.  Id. at p. 5; Docket No. 71 at p. 4.  According to the government, Torres also informed PRPB officers that they would find ammunition for a .22 caliber weapon when searching the Mitsubishi Montero.  Id.

During the investigation, federal law enforcement also conducted a search of Torres' phone.  See Magistrate Case No. 23-1310 (MDM).  The government alleges that upon searching the phone, they found a picture of a .45 caliber firearm on someone's lap taken on or about October 7, 2023, two weeks prior to the shooting.  The government alleges that the person in the photo is

Torres, and that the gun is "nearly identical to the .45" recovered the day of the shooting. (Docket No. 60 at p. 6.)

On November 1, 2023, a grand jury returned an indictment charging Torres with being a felon in possession of a firearm and ammunition (count one) and possession of a machine gun (count two). (Docket No. 3.) The indictment alleges that on or about October 23, 2023 Torres, knowing that he was a convicted felon, did knowingly possess firearms and ammunition, that is, one Glock .45 caliber firearm bearing serial number FXZ599, one Glock 9mm Luger caliber firearm bearing serial number BTDR920, one Glock, .40 caliber firearm bearing serial number LEW246, one hundred seven rounds of 9mm caliber ammunition, and thirty-six rounds of .40 caliber ammunition. Id. The indictment also avers that the three Glock pistols were modified to be capable of firing more than one shot by a single function of the trigger. Id.

To sustain a section 922(g)(1) conviction, the United States must prove: (1) that at the time Torres possessed the charged firearms, he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that Torres knowingly possessed the charged firearms; and (3) that Torres' possession of the firearms was in or affecting commerce. See 18 U.S.C. §922(g)(1) (emphasis added); see also United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014).

Trial was set to commence on July 7, 2025 (Docket No. 55.), but was continued to Jule 21, 2025 (Docket No. 112.)  On April 11, 2025, in preparation for trial, the government filed the motion *in limine* to preclude Torres from presenting a justification defense. (Docket No. 60.)  Torres responded.  (Docket No. 71.)  The government also filed a motion to include the Rule 404(b) evidence of Torres' prior conviction, for possession of a firearm without a license pursuant to P.R. Laws Ann. tit. 25 § 466h.  (Docket No. 74.)

Torres also filed an omnibus motion *in limine* on November 20, 2024, requesting that the Court:  (1) exclude all potential witnesses from the courtroom during the testimony of other witnesses and presentation of evidence; (2) exclude evidence of the defendant's prior conviction pursuant to Rule 404(b);[1] (3) exclude evidence not previously designated or discovered; and (4) exclude any testimony given in violation of the confrontation clause.  (Docket No. 76.)  The government responded.  (Docket No. 80.)

On May 20, 2025, Torres filed two more motions *in limine*.  He requested the Court exclude irrelevant and unfairly prejudicial evidence.  (Docket No. 82.)  He also requested the Court to

---

[1] While Torres has stipulated to a prior felony conviction, Torres requests that the Court decline to admit evidence of the prior felony conviction.  (Docket No. 78.)

preclude or strictly circumscribe the government's use of expert testimony.  (Docket No. 83.)  The government responded.  (Docket No. 89; Docket No. 90.)

On June 2, 2025, the government filed two other motions *in limine*.  It requests that the Court preclude Torres from engaging in improper arguments before the jury.  (Docket No. 86.)  It also requests the Court to preclude Torres from arguing and questioning any absence of investigative techniques.  (Docket No. 87.)  Torres responded.  (Docket No. 96.)

The government filed a superseding indictment on June 5, 2025, adding one round of .22 firearm ammunition to its previous charges.  (Docket No. 102.)  The government also corrected the serial number of one of the firearms and added Torres' known alias.  <u>See</u> Docket No. 105.

## II.  Justification Defense

The government moves the Court "to preclude any justification defense related to Defendant's unlawful possession of firearms prior to the shooting."  (Docket 60 at p. 12.)  It argues that "[t]he introduction of an unsupported justification defense would not only distract the jury but would also risk undermining the fairness of the trial by introducing a defense that is entirely irrelevant to the charges at hand."  <u>Id.</u> at p. 11.  Although the motion focuses on the possession of the .45 caliber firearm,

alleging that a cellphone extraction shows Torres holding the firearm in his lap at a time before the shooting occurred on October 23, 2023, the government still must prove possession of the .45 caliber firearm, .40 caliber firearm, the 9mm firearm, the one hundred seven rounds of 9mm ammunition, the thirty-six rounds of .40 caliber ammunition, and the one round of .22 caliber ammunition on or about the date of the shooting, October 23, 2023, as charged in the Superseding Indictment (Docket No. 102.)

The First Circuit Court of Appeals recognizes a justification defense to a felon-in-possession charge. United States v. Leahy, 473 F.3d 401, 409 (1st Cir. 2007). At trial, a defendant must satisfy four elements by a preponderance of evidence to raise a justification defense:

1.   The defendant was under an unlawful and imminent threat of death or serious bodily injury;

2.   The defendant did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct;

3.   The defendant had no reasonable legal alternative but to engage in that conduct; and

4.   There was a direct causal relationship between his criminal conduct and the need to avoid the threatened harm.

See Dixon v. United States, 548 U.S. 1, 4 n.2 (2006); see also Leahy, 473 F.3d at 409 (adopting the four-part framework discussed in Dixon).

At the motion in *limine* stage, however, the burden of proof is much lower.  The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.  Brown v. Ruane, 630 F.3d 62, 71 (1st Cir. 2011).  The right to present evidence is subject solely to reasonable restrictions.  United States v. Guzmán, 603 F.3d 99, 109 (1st Cir. 2010).  When the evidence presented in support of an anticipated defense "is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely."  United States v. Maxwell, 254 F.3d 21, 26 (1st Cir. 2001).  A defendant must carry an "entry level burden" of producing enough evidence to support a finding of the defense.  United States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992).  An entry level production of evidence requires a defendant to present more than a scintilla of evidence that shows he can satisfy the legal requirements for asserting the proposed defense.  United States v. Fort, Crim. No. 22-090-SE, 2023 WL 6216755, at *3 (D.N.H. Sept. 25, 2023).

The government argues Torres cannot meet this minimal burden as to any of the four elements of a justification defense. (Docket No. 60 at p. 10.)  The Court disagrees.

**A.    Unlawful and Imminent Threat**

A defendant must "offer sufficient evidence to establish that he was under an unlawful and imminent threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury at the time he was in possession of a firearm." United States v. Henderson, 911 F.3d 32, 36 (1st Cir. 2018) (internal quotations omitted).  "Imminence requires a real emergency giving rise to immediate danger to oneself or to a third party.  Id.

Torres proffers that he only possessed and discharged a firearm when he heard shots coming from the grey vehicle. (Docket No. 71 at p. 9; Docket No. 71-1 at p. 2.)  There was an imminent threat of death or serious bodily injury when shots were fired against Torres and the other three occupants of the Polaris.  See Fort, 2023 WL 6216755, at *4 ("To be able to present the justification defense to the jury, [defendant] must adduce some evidence – indeed, any evidence – that he was under an unlawful and present threat of death or serious bodily injury at the moment he first possessed the gun.") (emphasis in the original).

To counter these set of facts, the government argues that Torres "was not under an unlawful and imminent threat when he took picture of himself with his cellphone possessing a firearm or when [he] arrived at La Casita carrying a firearm with ammunition in his car." (Docket No. 60 at p. 10.) Torres states that the person in the picture is unidentifiable, and that the government merely speculates that the Glock, .45 caliber firearm in the picture is the same as the one used at the shooting. Finally, Torres states that he was not charged with having .22 caliber ammunition in his car on the day of the shooting. (Docket No. 71 at pp. 14-15.)

The government's argument that Torres possessed a .45 caliber firearm on or about October 7, 2023 based on a picture on his phone is unpersuasive at this stage of the proceedings. The government insinuates that since the .45 caliber firearm in the picture is the same one as the .45 caliber found inside the Polaris on October 23, 2023, it is Torres in the picture. On the other hand, Torres argues there is no evidence that the person in the picture is in fact Torres because you cannot see a face. (Docket No. 71 at p. 14-15.) "Conflicting theories are for the factfinder to decide, [and] not for us to entertain." Guzmán-Montañez, 756 F.3d at 9. Therefore, the Court will not determine which version of the facts is to be believed.

Torres' argument that he "is not charged with illegally possessing .22 caliber ammunition" is now moot. (Docket No. 71 at p. 15.) The First Circuit Court of Appeals has stated in United States v. Verrecchia, 196 F.3d 294, 301 (1st Cir. 1999) that the possession of a particular firearm is not an element under section 922(g)(1). The government need only establish the possession of any firearm charged in the counts. See id.; United States v. Buchmeier, 255 F.3d 415, 427-28 (7th Cir. 2001) (finding that the jury was properly instructed that they only needed to find defendant had possessed one of the firearms listed in the count to satisfy the elements of a felon-in-possession charge). Because the government filed a superseding indictment, it has the burden of proving that Torres possessed the .22 caliber round when he arrived at La Casita Bar. As stated above, it is for the jury to determine which version of the facts to believe. Therefore, Torres has provided more than a scintilla of evidence to show he was in an unlawful and imminent threat.

**B. Recklessness**

A justification defense is dependent upon the defendant not having recklessly placed himself in a situation in which he would be forced to engage in criminal conduct. There is no indication that Torres was reckless. The government suggests that Torres was reckless by placing himself in a situation with other

armed individuals late at night near a bar, but the sole fact that defendant went to a bar late at night is not "reckless" conduct that should preclude him from arguing a justification defense. Additionally, even if Torres had reason to believe that it would be dangerous to get into a car with armed individuals, simply getting into a car with other individuals is not necessarily reckless, even if they are armed. See United States v. Paolello, 951 F.2d 537, 541 (3d Cir. 1991) (finding that no reasonable trier of fact could find that it is "reckless" to leave a bar even though defendant had reason to believe that there would be trouble if he did). Torres told officers he went to La Casita Bar, which is a public place of business, before the shooting started. Based on the current record, he had no reason to believe he would be in danger there. See id. Furthermore, as Torres notes, this is not a case where the defendant was the primary aggressor. See Fort, 2023 WL 6216755, at *4. He argues he possessed the firearm after he heard gunshots coming from the grey car. See Docket No. 71 at p. 11; Docket No. 71-1 at 2. Therefore, there is enough evidence that Torres was not reckless.

### C. No Reasonable Legal Alternative & Causal Relationship

Torres also satisfies the third and fourth element of the justification defense. The defense is not available "if there was a reasonable, legal alternative to violating the law, a chance

both to do the criminal act and also to avoid the threatened harm."
United States v. Bailey, 444 U.S. 394, 410 (1980) (internal
quotations omitted). "The lack-of-reasonable-alternatives
requirement generally cannot be satisfied once the 'defendant has
reached a position where he can safely turn himself in to [or call
on] the authorities.'" United States v. Lebreault-Feliz, 807 F.3d
1, 5 (1st Cir. 2015).

Torres states he possessed the firearms after
individuals in a grey car began shooting towards him and his
companions. He argues that he had no legal alternative but to
defend his life and the lives of the other victims by possessing
and discharging the firearm. Based on his version of the facts,
there seems to have been no time to contact the authorities or
safely hide from the shooters.

The government argues "Defendant had multiple legal
alternatives to avoid the criminal conduct such as simply not
possessing firearms or ammunition in the first place." (Docket
No. 60 at p. 10.) The government appears to be referring to their
allegation that, based on the photo of his phone, Torres possessed
of the .45 caliber firearm prior to the shooting. As mentioned
above, whether Torres possessed the .45 caliber firearm prior to
October 23, 2023 is for the jury to determine.

Finally, if Torres' theory is believed, there is a direct causal relationship between Torres possessing the firearm and the threatened harm.  When the individuals in the grey car began shooting towards him and his three companions, there was an imminent threat of harm, and Torres possessed the gun to avoid greater injury.  Again, whether Torres possessed the .45 caliber firearm prior to the shooting is a question for the jury.  See Guzmán-Montañez, 756 F.3d at 9.  Therefore, the Court will not preclude Torres from entering evidence or argument in favor of a justification defense.  It is also for the jury to determine if Torres possessed the firearms and ammunition charged in the Superseding Indictment on or about October 23, 2023, the date of the shooting.  See Docket No. 102.

## III. Exclusion of Rule 404(b) Evidence

The government has requested that the Court allow them to introduce Rule 404(b) evidence.  (Docket No. 74.)  Pursuant to Rule 404(b), "evidence of any other crime . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Rule 404(b), however, is not exclusionary and allows for evidence of a previous crime to be admitted in order to prove something other than character such as "preparation, plan,

[or] knowledge." Fed. R. Evid. 404(b)(2); <u>United States v. Escobar-de Jesús</u>, 187 F.3d 148, 169 (1st Cir. 1999).

Requests by the government to introduce evidence of a defendant's prior criminal conduct are subject to a two-part test. <u>United States v. Henry</u>, 848 F.3d 1, 8 (1st Cir. 2017) (citing <u>United States v. Hicks</u>, 575 F.3d 130, 142 (1st Cir. 2009)). "First, a court must ask whether the proffered evidence has a 'special' relevance, *i.e.*, a non-propensity relevance." <u>Id.</u> If prior crime evidence falls within the carveout contemplated by Rule 404(b)(2), the court then must consider whether the evidence should nevertheless be excluded pursuant to Federal Rule of Evidence 403 ("Rule 403"), which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; <u>Henry</u>, 848 F.3d at 8.

Here, the government has requested to use evidence that the defendant was sentenced by a Commonwealth court to a firearms possession charge in August 2022. The charge was "Unlawful Carry, Possession or Operation of Automatic or Semiautomatic Long Firearms, or Sawed-off Shotguns." P.R. Laws Ann. Tit. 25, § 466h; <u>see also</u> Docket No. 74-2. The government argues that this charge should be admitted for purposes of establishing knowledge. (Docket No. 74.) One of the elements the government must prove beyond

reasonable doubt pursuant to 18 U.S.C. §922(g) is that the defendant *knowingly* possessed firearms and ammunition, and it must also prove beyond a reasonable doubt that the defendant *knowingly* possessed a machinegun pursuant to 18 U.S.C. section 922(o). (emphasis added). The government believes that the defendant's prior conviction for possession of a firearm establishes not only that he has knowledge of firearms generally, but also that it is highly probative of opportunity, execution, intent, absence of mistake and lack of accident. The government also notes that the prior conviction mirrors the unlawful conduct in the case *sub judice*. (Docket No. 74 at pp. 3-4.)

In response, Torres argues that "[given his] anticipated justification defense, the issue of knowledge would be conceded." (Docket No. 78 at p. 2.) Torres reminds the Court that he was not convicted of possessing an *automatic* rifle in his previous case, only for possessing an unlicensed firearm. (Docket No. 78 at p. 4-6.) (emphasis added). Torres notes that although his prior conviction is for a 9mm firearm (the same as one of the three firearms charged in this case), it is distinct from the .40 caliber firearm and .45 caliber firearm charged here and cannot be admitted. Id.

The Court finds that the defendant's arguments miss their mark. "A defendant's failure to argue lack of knowledge or intent

. . . does not remove those issues from the case." Henry, 848
F.3d at 9 (internal quotations omitted).  The government still has
the burden of proving knowledge, even though Torres is stipulating
to the issue.  One way the government can prove knowledge is by
introducing a prior firearms conviction.  See, e.g. United States
v. Centeno-González, 989 F.3d 36, 51 (1st Cir. 2021) (finding that
evidence relating to the defendant's prior firearms conviction
went directly to the question of his knowledge of firearms rather
than to his propensity toward criminal activity); United States v.
Smith, 101 F.3d 202, 210-11 (1st Cir. 1996) (holding that testimony
of a prior firearms offense helped establish that the defendant
knowingly possessed a firearm and ammunition as required pursuant
to 18 U.S.C. § 922(g)); United States v. Díaz-Martínez, 71 F.3d
946, 951 n.4 (1st Cir. 1995) (evidence that the defendant, who was
charged with possession of firearms with obliterated serial
numbers in violation of 18 U.S.C. § 922(k), was involved in a
shootout immediately before his arrest, was "integrally related"
to his knowledge of firearms.)  Furthermore, from a purely
practical perspective, the Court finds the government's reasoning
is sound.  While Torres may not have previously pled guilty to
possessing an automatic weapon, his knowledge of a 9mm firearm
could lead a reasonable jury to infer that he had knowledge about
other firearms.

Torres next argues that under the second step of the Court's analysis, Rule 403, the probative value of his prior firearms conviction is outweighed by the unfair prejudice of introducing this evidence.  (Docket No. 78.)   This argument is equally unpersuasive.  Rule 403 does not protect against prejudicial evidence because virtually all evidence in a criminal proceeding is likely prejudicial in some way.  United States v. Villa-Guillén, 102 F.4th 508, 518 (1st Cir. 2024) (citing United States v. Morales-Aldahondo, 524 F.3d 115, 119-20 (1st Cir. 2008) (additional citations omitted).  To exclude evidence pursuant to Rule 403, the prejudice must be "unfair" and "substantially outweigh" its probative value.  Id.; Fed. R. Evid. 403.  To the extent Torres stipulates to his felon status due to the prior felony conviction (see Docket No. 78 at p.3 n.2), and considering the previous finding that the evidence goes to the defendant's knowledge of firearms, the Court determines that the probative value of Torres' prior firearms conviction is not substantially outweighed by unfair prejudice to the defendant.  The government's motion to include the Rule 404(b) evidence of a prior conviction is therefore **GRANTED.**

When introducing this evidence, however, the government is limited to merely adding that Torres' prior conviction was a

firearms offense in order to show his knowledge of firearms
generally.

## IV.    Presence of Witnesses During Trial

Torres has requested that the Court exclude witnesses from
the courtroom so that they may not hear the testimony of other
witnesses in line with Federal Rule of Evidence 615(a).  (Docket
No. 76); see U.S. v. Sepúlveda, 15 F.3d 1161, 1176 (1st Cir. 1993).
The government does not object to this request and therefore it is
**GRANTED**.    Torres also requests that he and the case agent be
exempted from this rule and be allowed to discuss their testimony
with the attorneys involved in the case provided no witnesses are
present.    The Court likewise **GRANTS** this request.    As the
defendant, Torres should, of course, be present during the trial.
The case agent is allowed to be in Court throughout the trial.  If
Torres decides to testify, however, he may not confer with his
counsel while his testimony is ongoing.

## V.    Exclusion of Evidence Not Designated or Discovered

Torres requests that the government be barred from
introducing any evidence not designated and not previously
discovered.  (Docket No. 76.)  While the government does not intend
to introduce evidence not previously discovered, it protests the
language used by Torres and worries it may restrict its ability to
change its strategy mid-trial.    The Court finds the motion to be

premature and will make determinations as to the admissibility of evidence as the need arises.    This request is therefore **DENIED WITHOUT PREJUDICE.**

## VI.   Exclusion of Testimony in Violation of the Confrontation Clause

Torres next requests that the Court prohibit the government from violating the confrontation clause of the United States Constitution as interpreted in Crawford v. Washington, 541 U.S. 36 (2004); United States v. Casas, 356 F.3d 104 (1st Cir. 2004); and others.   (Docket No. 82.)   According to Torres, the Court should prohibit the government from introducing hearsay couched in summary witness or "overview" testimony.   To the extent that Torres is asking the Court to prohibit the government from violating constitutional protections the motion is **GRANTED.**    Additional hearsay objections, however, will be dealt with during trial.

## VII. Federal Rules of Evidence 401, 402 and 403

Torres seeks to exclude the "ICF Autopsy Report," "photos and outlines from October 23, 2023," and testimony from Walberto L. Rodríguez about "whether or not certain bullet, projectiles or casings from the crime scene were shot from any of the three recovered firearms" because they are irrelevant and unfairly prejudicial.   (Docket No. 82 at pp. 3-4; Docket No. 83 at p. 4.) Torres also argues that Rodríguez's testimony is cumulative

because it is elicited for the same reasons that ATF expert Gregory S. Stimmel's testimony is elicited.  (Docket No. 83 p. 4.)

Pursuant to Federal Rule of Evidence 402, "[r]elevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."  Fed. R. Evid. 402.  "Irrelevant evidence is not admissible."  Id. "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Of course, not all relevant evidence is admissible.  Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. District courts possess broad discretion in determining the admissibility of evidence.  See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (internal quotation marks omitted).  Because the Rule 403 inquiry is "quintessentially a fact-sensitive enterprise," district courts are "in the best position to make such fact-bound assessments."  Neece v. City of

Chicopee, 106 F.4th 83, 96 (1st Cir. 2024) (internal citation and quotation omitted).

A.    **IFC Autopsy Report**

Torres argues that the IFC Autopsy Report "contains pages of irrelevant, inflammatory, and gory detail concerning [the Polaris driver's] matter of death." (Docket No. 82 at. p. 4.) The government states that the ICF autopsy report establishes that at least one of the gunshot wounds originated from Torres' seat. (Docket No. 89 at p. 3.) According to the government, the trajectory shows that Torres discharged the weapon, and as a result, a jury can infer Torres had knowledge of the characteristic that made the weapon a machinegun. Id. Furthermore, the government states that the evidence will not be unfairly prejudicial because it "will have a limited direct examination focused on the relevant gunshot wound and its trajectory" and "will not introduce any of the autopsy photos or ask the pathologist to discuss the victim's cause of death." Id. The bullet trajectory could establish Torres' knowledge of machineguns because "knowledge can be inferred from circumstantial evidence . . . . And firing a fully automatic weapon would make the regulated characteristics of the weapon immediately apparent to its owner." Staples v. United States, 511 U.S. 600, 615 n.11 (1994). Although it may not be clear, however, how discussing the trajectory of **one**

gunshot wound establishes that it was made by a machinegun, that part of the autopsy report which discusses the gunshot wound and its trajectory will be admitted.  One or more autopsy reports will be admitted only if they would assist the expert to explain the trajectory of the bullet which caused the gunshot wound.  The pathologist will not be permitted to testify about the cause of the victim's death.  Therefore, Torres' request to exclude the IFC autopsy report as irrelevant and unfairly prejudicial is **GRANTED IN PART**.

   **B.   Photos and Outlines of October 23, 2023 Shooting**

        Torres moves to exclude the photos and outlines of the shooting because they have no probative value to the October 23, 2023 possession charges.  (Docket No. 82 at p. 4.)  The government counterargues that the photos and outlines show where the ammunition and the three machineguns were found and are relevant to Torres' possession of the machineguns on October 23, 2023.  Id. at p. 4.  Considering Torres intends to present a justification defense, the photos and outlines can help the jury understand the events that may have led to his possession of the firearms on October 23, 2023.  The Court finds that this evidence is relevant and not unfairly prejudicial.  Therefore, Torres' request to exclude the photos and outlines is **DENIED**. Both parties will, however, only select the most relevant photos and will not

introduce photos displaying the victim's dead body.  See Docket No. 89 at pp. 4-5.

###### C.    Testimony of Walberto L. Rodríguez-Maldonado

Torres' last request is to preclude or limit the testimony of Walberto L. Rodríguez-Maldonado.  (Docket No 82 at p. 4; Docket No. 83 at pp. 4-5.)  He argues that Rodríguez's testimony is needlessly cumulative because it elicits the same testimony as ATF expert Gregory Stimmel's testimony.  He also argues that it is irrelevant or unfairly prejudicial.[2]  Id.  The government states that the testimony differs from Stimmel's because Rodríguez's testimony will be limited to matching the bullet projectiles and casings to the machineguns.  The government also counters that the testimony is relevant to establishing Torres' knowledge of the machinegun functionality, and that it would not be unfairly prejudicial because Torres admitted that he used one of the machineguns.  (Docket No. 89 at pp. 5-6.)

The Court agrees with the government that the testimony is not cumulative because Rodríguez's testimony is focused on whether the bullet projectiles or casings match the recovered machineguns, while Stimmel's testimony will discuss whether the

---

[2] Torres does not challenge Rodríguez's qualifications as an expert in the field of firearms and toolmark identification, methodology or analysis.

recovered firearms are considered machineguns.  See Docket No. 89 at p. 5 n.2; see also Docket No. 88 at pp. 2-3.  The testimony is also relevant to establish Torres' knowledge that the firearms had the functionality of being machine guns.  If the government shows that Torres fired a weapon or was near the weapons, it is "a circumstance which would make the regulated characteristics of the weapon immediately apparent."  See also United States v. Nieves-Castaño, 480 F.3d 597, 601 (1st Cir. 2007).  Therefore, Rodríguez's testimony connecting the bullet projectiles or casings to the recovered firearms could allow the jury to infer that Torres had knowledge that the recovered firearms were machineguns.

Finally, Torres argues this testimony could be unfairly prejudicial despite Torres admitting shooting a "fuletazo".[3] (Docket No. 82; Docket No. 83; Docket No. 89; Docket No. 90.) Torres believes the testimony will mislead the jury because it suggests he shot at others and will connect him to the victim's death.  (Docket No. 82 at p. 5; Docket No. 83 at p. 4.)  The Court has already excluded most of the IFC autopsy report, and the government has stated "Rodriguez will not discuss whether bullet projectiles or casings resulted in the death of the victim." (Docket No. 90 at p. 2.)  As such, there is a lower risk of unfair

---

[3] There is no direct English translation, but it is meant to imply spraying of bullets.  See Docket No. 89 at p. 5.

prejudice.  Additionally, Torres' concern that the jury will be inflamed by the suggestion that he shot at others is unconvincing. Torres' justification defense is premised on the fact that he did possess the firearms and fired it because he was under an imminent and unlawful threat – that he shot at others is effectively implied.  Therefore, the Court **DENIES** Torres' request.  The Court "remains faithful to the long-standing tradition of allowing unfettered testimony of qualified ballistics experts." United States v. Casey, 928 F. Supp. 2d 397, 400 (D.P.R. 2013) (Delgado-Colón, J.) (citing United States v. Hicks, 389 F.3d 514, 526 (5th Cir. 2004)).  Rodríguez, however, is reminded that he cannot discuss the victim's death.

Therefore, Torres' motion *in limine* to preclude irrelevant and unfairly prejudicial evidence is **GRANTED IN PART** and **DENIED IN PART**.  (Docket No. 82.)  Torres' request to exclude the IFC Autopsy Report is **GRANTED IN PART**.  Torres' request to exclude the photos and outlines of the shooting is **DENIED**. Finally, Torres' request to limit Rodríguez's testimony as a firearms, and toolmark expert is **DENIED**.

## VIII. Designation of Expert

Torres' last motion requests that the Court order the government to comply with Federal Rule of Criminal Procedure 16(a)(1)(G) ("Rule 16") and conduct the proper expert disclosures

before trial.  (Docket No. 83.)  Rule 16 states in its relevant section that "the disclosure for each expert witness must contain: a complete statement of all opinions that the government will elicit from the witness . . . ; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."  Fed. R. Crim. P. 16(a)(1)(G)(iii).

Torres argues that the disclosures for Marynés Maldonado-Nieves provided by the government lack the necessary detail. (Docket No. 83 at pp. 3-4.)  The government recently amended its notice with the required information.  See Docket No. 89.  For this reason, Torres' motion requesting compliance with Rule 16 (Docket No. 83) is **DENIED AS MOOT.**

## IX.  Reasonable Doubt

The government requests that the Court prohibit Torres from defining "reasonable doubt."  (Docket No. 86 at pp. 1-2.)  This Court possesses "wide discretion in fashioning instructions" to "provide the jury with a clear and succinct statement of the law." 9 Bender's Fed. Practice Forms (2021); Kelly v. Airborne Freight Corp., 140 F.3d 335, 352 (1st Cir. 1996) (noting that the First Circuit Court of Appeals "customarily cede[s] wide distraction to

the trial courts to fashion jury instructions as they see fit"); see Fed. R. Crim P. 51(b) ("The court . . . may instruct the jury at any time before the jury is discharged.").

Torres "asserts that argument and explanation of the burden of proof in closing argument is necessary to protect [his] constitutional entitlement to effective assistance of counsel and a fundamentally fair trial." (Docket No. 115 at p. 7.)  The phrase "'reasonable doubt[, however,] does not require definition." United States v. Wallace, 461 F.3d 15, 30 (1st Cir. 2006); Víctor v. Nebraska, 511 U.S. 1, 5 (1994) ("[The] Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.").  In fact, "most efforts at clarification result in further obfuscation of the concept." United States v. Fields, 660 F.3d 95, 97 (1st Cir. 2011).  For example, in United States v. Ademaj, defense counsel attempted to define "reasonable doubt" and equated it with reaching a consensus to "a moral certainty."  170 F.3d 58, 66 (1st Cir. 1999).  The First Circuit Court of Appeals determined that the district court properly precluded counsel from equating 'reasonable doubt' with 'an abiding conviction to a moral certainty.'"  Id.  Therefore, Torres will not define reasonable doubt but may argue that the government has failed to satisfy its burden of proof beyond a reasonable doubt.  See Knight v. Spencer, 447 F.3d 6, 18 (1st Cir.

2006) ("[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers.")

## X.   Jury Nullification

The government requests the Court to preclude Torres from presenting a jury nullification argument.   Torres argues the government's request should be denied because it is an attempt to restrict his ability to mount a defense.   (Docket No. 115 at p. 7.) The Court disagrees.

Jury nullification is a "practice whereby a juror votes in purposeful disregard of the evidence, defying the court's instructions on the law." United States v. Appolon, 695 F.3d 44, 65 (1st Cir. 2012) (internal citation and quotation omitted). Requesting that the jury acquit the defendant for reasons other than insufficient proof (*i.e.*, potential punishment following a conviction, religious beliefs, unjust prosecution) is a form of jury nullification. See, e.g., United States v. Apicelli, Crim. No. 14-cr-012-01-JD, 2015 WL 3398139 (D.N.H. May 26, 2015)

(collecting cases).  If Torres presents evidence of a justification
defense, he may talk about this evidence.  The Court will not
consider discussion of this evidence as a plea to the jury to
disregard the evidence. On the contrary, it is an appeal to take
all the evidence into consideration.

> The Court, however, will instruct the jury that:

> The punishment provided by law for the offenses charged
> in the indictment is a matter exclusively within the
> province of the judge, and should never be considered by
> you in any way in arriving at an impartial verdict as to
> the guilt or innocence of the defendant.

See United States v. Manning, 79 F.3d 212, 219 (1st Cir. 1996)
("An attorney's attempt to achieve [jury nullification]
indirectly, by arguing the severity of the punishment to the jury,
is equally impermissible."); United States v. Joselyn, 99 F.3d
1182, 1197 n.11 (1st Cir. 1996) (noting that defense counsel "made
an improper appeal for jury nullification" by stating:  "People
aren't born and the Almighty says you may be a prosecutor.  That's
a right that's given by the people.  It's a trust.  And when it's
abused, somebody's got to do something about it.")  United States
v. Arena, 918 F. Supp. 561, 580 (N.D.N.Y. 1996) ("The only purpose
of repeated references to the evils of abortion would be to appeal
to the emotions of the jury, inviting nullification."); United
States v. Chugay, Case No. 21-0008, 2022 U.S. Dist. LEXIS 97875,
at *3-4 (S.D. Fla. June 1, 2023) (granting the United States'

motion to preclude "[any] argument pertaining to Defendant's claimed motive to help immigrants," because these statements requested jury nullification).

"Jury nullification verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." United States v. Rushin, 844 F.3d 933, 939 (11th Cir. 2016) (internal citation and quotation omitted).  This Court possesses the discretion to "block defense attorney's attempts to serenade a jury with the siren song of nullification," and "may instruct the jury on the dimensions of their duty to the exclusion of jury nullification."  United States v. Sepúlveda, 15 F.3d 1161, 1190 (1st Cir. 1993) (noting that "neither the court nor counsel should encourage jurors to exercise [the] power [to nullify a prosecution]"); see United States v. Díaz, 820 F. Supp. 2d 301, 306 (D.P.R. 2011) (prohibiting the defendant from setting forth a jury nullification argument at trial) (Besosa, J.); United States v. Apicelli, Case No. 14-012, 2015 U.S. Dist. LEXIS 67667, at *2 (D.N.H. May 26, 2015) (holding that "defense counsel is precluded from raising issues related to jury nullification at trial, and the court will not instruct the jury on the nullification power") (citation omitted).

Therefore, Torres is precluded from presenting a jury nullification argument.  This prohibition does not, however,

encompass arguments based on any evidence presented of a potential justification defense. It only encompasses statements intended to inflame the passions of the jury. The Court, however, is not clairvoyant and defense counsel need not preview his or her final appeal to the jury. The United States may raise timely objections during closing argument or at any time during the trial.

## XI. Golden Rule Argument

The government requests the Court preclude Torres from asking the jurors to place themselves in his shoes. (Docket No. 86 at pp. 3-4.) This has been referred to as the "Golden Rule" appeal, and it has universally been recognized as improper. United States v. Román, 492 F.3d 803, 806 (7th Cir. 2007).

A "Golden Rule" argument "encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather on the evidence." United States v. Moreno, 947 F.2d 7, 8 (1st Cir. 1991); see also Román, 492 F.3d at 806. Therefore, to maintain the jury's impartiality and focus on the evidence, the Court **GRANTS** the government's request to prohibit Torres from "Golden Rule" arguments. (Docket No. 86.) Torres may, however, ask the jury to use their collective common sense in weighing the evidence. Moreno, 947 F.3d at 8; see also United States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir. 1990) (jury may draw "inferences formulated . . . in the light of

its collective understanding of human behavior in the circumstances revealed by the evidence.")

## XII. Evidence of Possible Penalties

The government moves the Court to "preclude [Torres] from making arguments or otherwise mentioning the potential penalties faced upon conviction." (Docket No. 86 at p. 4.) "Torres does not intend to introduce evidence, make argument, or otherwise mention the potential penalties he faces if he were convicted." (Docket No. 115 at p. 10.)

A defendant's potential sentence "is not relevant to the determination of whether there [is] sufficient evidence to support the conviction itself." United States v. Merlino, 592 F.3d 22, 30 (1st Cir. 2010) (citing Shannon v. United States, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed")). Because Torres states that he will not discuss possible penalties, the government's request is **GRANTED.** Accordingly, Torres is prohibited from referring to potential penalties that may result from a conviction. See United States v. Alarcón-Rodríguez, Crim. No. 23-354, 2025 WL 598609 (D.P.R. Feb. 25, 2025) (Besosa, J.).

## XIII. Inadequate Investigation Evidence

Finally, the government moves to preclude the defendants from "posing questions regarding the absence of investigative tools like DNA or fingerprint analysis on the firearms or ammunition unless it is tied to the weight afforded to specific physical evidence that has been introduced at trial." (Docket No. 87 at p. 3.) Torres counters that "the motion is overbroad and premature." (Docket No. 96 at 1.) This motion requires the Court to assess the relevance of certain investigative tools in relation to evidence adduced at trial.

"Merely showing that an investigation is sloppy does not establish relevance." United States v. Patrick, 248 F.3d 11, 22 (1st Cir. 2001) (holding that the district court did not abuse its discretion by excluding evidence "that the police failed to take steps to adequately eliminate other possible suspects" because "[such] speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police".) The efficacy of a criminal investigation may, however, "sometimes be relevant to the ultimate issue of guilt in a case." See United States v. Carmichael, 373 F. Supp. 1293, 1296 (M.D. Ala. 2005) (citing Lowenfield v. Phelps, 817 F.2d 285, 291-92 (5th Cir. 1987) (holding that defense counsel acted reasonably by

introducing evidence of "sloppy police work" to undermine the chain
of custody and "set the stage for an argument that others were
implicated in the murders")).  The Court is cognizant that this
evidence may be irrelevant and confuse the jury.  See United States
v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998) ("Under our system
of criminal justice, the issue submitted to the jury is whether
the accused is guilty or not guilty.  The jury is not asked to
render judgment about non-parties, nor is it normally asked to
render a verdict on the government's investigation.").

As previously stated, all relevant evidence is admissible
unless excluded by the United States Constitution, federal
statute, or other rule.  Fed. R. Evid. 402.  Evidence is relevant
if "it has any tendency to make a fact more or less probable than
it would be without the evidence [and] the fact is of consequence
in determining the action."  Fed. R. Evid. 401.  The Court will
assess the relevance of certain investigative tools and whether
they are subject to cross-examination within the context of trial.
Moreover, the parties may propose a limiting instruction regarding
the use or absence of investigative techniques at the charging
conference.  See, e.g., United States v. Lassend, 545 F. App'x 3,
5 (1st Cir. 2013) (holding that the district court did not err by
instructing the jury that "it could draw reasonable inferences
from the fact that certain tests were inconclusive or not

conducted, or that certain techniques were not used, as well as that law enforcement is not legally required to use any specific or all possible tests or techniques in order to prove its case").

**XIV. Conclusion**

For the reasons set forth above, the United States' motion *in limine* to preclude a justification defense (Docket No. 60) is **DENIED.** The government's request for the admission of Rule 404(b) evidence (Docket No. 74) is **GRANTED.**

The defendant's omnibus motion *in limine* (Docket No. 76) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.** The defendant's request that the Court exclude witnesses from the courtroom so that they may not hear the testimony of other witnesses, with the exception of the case agent, is **GRANTED.** If the defendant testifies, he may not consult with his counsel while his testimony is ongoing. Likewise, the defendant's request that the Court prohibit the government from violating the confrontation clause is **GRANTED,** but his request that the government be barred from presenting evidence not designated or discovered is **DENIED WITHOUT PREJUDICE.**

The defendant's motion *in limine* to exclude irrelevant and unfairly prejudicial evidence (Docket No. 82.) is **GRANTED IN PART** and **DENIED IN PART.** The defendant's request to exclude the IFC Autopsy report is **GRANTED IN PART,** his request to exclude the

photos and outlines of the October 23, 2023 shooting is **DENIED,** and his request to limit the testimony of expert Walfredo L. Rodríguez-Maldonado's testimony is **DENIED.**

The defendant's motion requesting compliance with Rule 16 concerning expert testimony (Docket No. 83) is **MOOT.**

The United States' motion *in limine* regarding improper arguments is **GRANTED.**  (Docket No. 86.)

The United States' motion *in limine* to preclude questions about the absence of investigative tools is **DENIED WITHOUT PREJUDICE.**  (Docket No. 87.)

Trial is set to commence on **July 21, 2025 at 9:00 a.m.** before the undersigned in a courtroom to be determined in the Old San Juan Courthouse.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 17, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE