IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

            **v.**               **Criminal No.** 23-410 (FAB)

JOSÉ M. TORRES-DÍAZ,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Defendant José Torres-Díaz ("Torres") moves to suppress his statements and evidence obtained pursuant to a search of his cellphone. (Docket No. 91.) The motion also requests an evidentiary hearing. Id. For the reasons set forth below, Torres's motion to suppress is **DENIED**. The request for an evidentiary hearing is also **DENIED**.

**I.   Background**

On October 23, 2023, at approximately 12:00 midnight, officers of the Puerto Rico Police Bureau ("PRPB") responded to a report of gunfire near La Casita Bar in Juana Díaz, Puerto Rico. (Docket No. 60 at p. 1; Docket No. 71-1.)  When PRPB officers arrived, a Polaris sport vehicle was on the side of the road and numerous shell casings were on the road. Id. Torres was injured; he was shot in the shoulder. (Docket No. 71 at p. 5.)

Torres was taken to the emergency room at San Lucas Hospital
for treatment, arriving around 1:50 a.m. (Docket No. 91 at pp. 2-
3.) He was discharged at 4:03 a.m. (Docket No. 91-1 at p. 11.)
At the hospital, Torres was interviewed twice. The first interview
was at 2:00 a.m. (Docket No. 91 at p. 4.) The second interview
was at 4:55 a.m. (Docket No. 91 at p. 5.) Torres was interviewed
a third time at 6:55 a.m. at the police station. (Docket No. 91
at p. 5.) Torres failed to provide certified translations of the
interviews to the Court for review.

On November 1, 2023, a grand jury returned an indictment
charging Torres with being a felon in possession of a firearm and
ammunition (count one) and possession of a machinegun (count two).
(Docket No. 3.) On December 8, 2023, federal law enforcement
sought a warrant to search Torres's cellphone. See Magistrate
Case No. 23-1310 (MDM); Docket No. 91-7. They asserted the
cellphone contained evidence of a crime, i.e., possession of a
machinegun in violation of 18 U.S.C. § 922(o). In support of the
warrant application, Agent Ricardo A. Jiménez of the Bureau of
Alcohol, Tobacco, Firearms and Explosives ("ATF") stated that
Torres had claimed ownership of a cellphone that was found at the
location of the October 23, 2023 shooting. Id.

Trial is set to commence on July 21, 2025. (Docket No. 55.) Torres filed the current motion to suppress on June 2, 2025. (Docket No. 91.)  The government responded.  (Docket No. 110.)

## II.  Discussion

### A.  The Three Interrogations

Torres moves the Court on two grounds to suppress the statements he made during three interrogations with PRPB officers. (Docket No. 91 at pp. 7-12.)  First, he argues that the officers conducted an unlawful two-step interrogation, where he was first interrogated without receiving Miranda[1] warnings, and then once the officer received defendant's confession, the officer gave him the warnings for him to confess again.  See Missouri v. Seibert, 542 U.S. 600 (2004) (plurality opinion) (finding that statements from a two-stage interview can only be admitted if the Miranda warnings and accompanying break between the interviews are sufficient to give the suspect the reasonable belief that he has the right not to speak with the police).  Second, Torres argues that his statements were involuntary because he was in severe pain due to his gunshot injury, had just suffered a traumatic experience, and had not slept in twenty-four hours.  (Docket No. 91 at pp. 12-15.)

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

The Court, however, cannot meaningfully review Torres's arguments. Torres requested that the Court grant him ten days from when he filed the motion to suppress to file certified translations, which would have been on June 12, 2025. (Docket No. 91 at p. 4 n.3.) To date, Torres has failed to provide an official translation of the officer's notes, as required by the Jones Act, 48 U.S.C. § 864, when the recorded language is not in English. See 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003) (citing 48 U.S.C. § 864) ("Providing an English-language transcript of wiretap evidence is more than merely useful when the recorded language is not English; for Jones Act purposes, it is necessary. The language of the federal courts is English. Participants, including judges, jurors, and counsel, are entitled to understand the proceedings in English."); see also Loc.Civ.R. 5(c) (2023) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English . . ."); L.Crim.R. 112 (2023) ("Unless otherwise specified in the Federal Rules of Criminal Procedure, by local rule, or by order of the court, motion practice in criminal cases shall be subject to L.Civ.R. 5 . . . . .") Accordingly,

Torres's request to submit translations is **DENIED**. Because it does not have the translations before it, the Court cannot determine whether the three interrogations are the type of two-step interview held to be unlawful under Seibert.

Torres's argument that his statements were involuntary cannot be meaningfully reviewed either. Although the Court acknowledges that Torres was in pain that was "acute" and "severe," the hospital records also indicate that, upon arrival, Torres was able to speak in full sentences without shortness of breath. (Docket No. 91-1 at pp. 8, 11.) When he was discharged, Torres was stable, could walk, and only received instructions of self-care. Id. The only evidence on his mental state is that he was alert and was walking around the emergency room without any neurological deficit. Id. at pp. 6, 9. While the involuntariness of a statement can be affected by a defendant's mental state, the crux to find involuntariness is whether the police activity was coercive. Colorado v. Connelly, 479 U.S. 157, 167 (1986). For example, in United States v. Palmer, 203 F.3d 55 (1st Cir. 2000), the First Circuit Court of Appeals held that a defendant's mental state, altered because he was going through heroin withdrawal, was not dispositive because "mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness." Id. at 61-62. When interrogating

Criminal No. 23-410 (FAB)                                                  6

officers, however, are aware of a defendant's "compromised mental state . . . a lesser quantum of coercion is required" for a court to find the statements involuntary. Hughes, 640 F.3d at 438-39. Whether Torres had an altered mental state and whether the police officer knew of his alleged altered mental state cannot be assessed due Torres's failure to provide a certified translation.

Accordingly, his motion to suppress the statements during the three interviews is **DENIED**.

**B.    The Evidentiary Hearing**

Torres asserts that Seibert-based claims require an evidentiary hearing. (Docket No. 91 at p. 12.) The government responds that Torres "failed to provide any facts that create a dispute warranting an evidentiary hearing and fails to establish a legal basis for any Fifth Amendment violations." (Docket No. 110 at p. 8.) The Court agrees. Because Torres failed to provide certified translations as required by the Jones Act and the Local Rules, he has failed to show that "material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Cintrón, 724 F.3d 32, 36 (1st Cir. 2013) (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)). The record is devoid of any material facts in dispute. Accordingly, the motion for an evidentiary hearing is **DENIED**.

### C.    The Fourth Amendment

Torres moves to suppress the evidence obtained from his cellphone because the warrant lacks probable cause and particularity.  (Docket No. 91 at pp. 15-18.)  The government counterargues that Torres does not have standing to challenge the search, that there was probable cause, and that the warrant complied with the particularity requirement.  (Docket No. 110 at pp. 8-11.)  The government also argues that the evidence retrieved from the cellphone would have inevitably been discovered because Torres signed a consent form.  Id. at p. 11.)

### 1.    Standing

As a threshold matter, the Court will address whether Torres has standing to challenge the warrant.  The government argues that Torres has not supported his statement that he is the owner of the cellphone with an affidavit or declaration to support the assertion.  (Docket No. 110 at pp. 8-9.)

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  To assert a Fourth Amendment challenge, Torres must possess "a legitimate expectation of privacy in the place searched or the thing seized." United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009); United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005) ("[F]ailure to present evidence with respect to

such an expectation prevents a defendant from making a claim for
suppression under the Fourth Amendment.").  A movant's expectation
of privacy must be reasonable pursuant to an objective and
subjective assessment.  <u>Kyllo v. United States</u>, 533 U.S. 27, 33
(2000) ("[A] Fourth Amendment search does not occur . . . unless
the individual manifested a subjective expectation of privacy in
the object of the challenged search, and society is willing to
recognize that expectation as reasonable.") (citation omitted).

      The protections enshrined by the Fourth Amendment
are "personal [and] may not be vicariously asserted."  <u>United
States v. Cruz-Mercedes</u>, 379 F. Supp. 3d 24, 35 (D. Mass. 2019)
(citing <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-34 (1979)).[2]  Standing
analysis is highly contextual, consisting of general guidelines to
distinguish permissible police interference from unconstitutional
government intrusion.  <u>United States v. Almeida</u>, 748 F.3d 41, 47
(1st Cir. 2014).  Courts consider the following factors:
"ownership, possession, and/or control; historical use of the
property searched or the thing seized; ability to regulate access;
the totality of the surrounding circumstances; the existence or

---

[2] Courts and parties frequently refer to this threshold requirement as
one of "standing."  <u>See</u>, <u>e.g.</u>, <u>United States v. Symonevich</u>, 688 F.3d 12,
18-21 (1st Cir. 2012).  The United States Supreme Court has noted,
however, that the analysis is "more properly placed within the purview
of substantive Fourth Amendment law than within that of
standing."  <u>United States v. Lipscomb</u>, 539 F.3d 32, 36 (1st Cir. 2008)
(quoting <u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998)).

nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." Id. (quoting United States v. Aguirre, 839 F.2d 854, 856-57 (1st Cir. 1988)).

Here, Torres's motion states the cellphone is his property. See Docket No. 110 at p. 8. While the government is correct that Torres failed to attach an affidavit or declaration to support the assertion, there is also no evidence that Torres has ever denied ownership of the cellphone or disassociated himself from the cellphone. See United States v. Pierce, 959 F.2d 1297, 1303 (5th Cir. 1992) (finding significant to the standing analysis that defendant "continually attempted to dissociate himself from the package," and never attempted to establish a privacy interest in the package). On the contrary, Torres has always claimed ownership of the cellphone. (Docket No. 91-7 at p. 5.) Additionally, the government submitted a search consent form, where Torres consents to the search "as an owner and/or person with interest in the property to be searched." (Docket No. 110-1 at p. 2.) Finally, there is an objective expectation of privacy on the information inside a defendant's cellphone. See Riley v. California, 573 U.S. 373, 403 (2014) (holding that the information inside cellphones is protected by the Fourth Amendment).

Therefore, Torres does have standing to challenge the warrant.

### 2. Probable Cause

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed — the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched — the so-called 'nexus' element." United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015). Torres argues that the warrant lacked probable cause because it "relied on suppressible, involuntary statements." (Docket No. 91 at p. 16.) He states that without Torres's statement that he owned the cellphone, there is no probable cause. (Docket No. 91 at p. 16.) Torres's argument hinges on the suppression of the statements he made during the interviews. As discussed above, Torres's request to suppress the three interviews was denied. Therefore, the Court reviews the probable cause finding with Torres's statements.

In reviewing the sufficiency of an affidavit supporting a search warrant, courts afford the issuing magistrate judge ample deference; "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Illinois v. Gates, 462 U.S. 213, 236 (1983). The Court will only reverse a magistrate judge's initial evaluation "if we

Criminal No. 23-410 (FAB)                                    11

see no substantial basis for concluding that probable cause existed." <u>United States v. Ribeiro</u>, 397 F.3d 43, 48 (1st Cir. 2005).

        Courts generally presume that an affidavit submitted in support of a search warrant application is valid, "but that presumption may be surmounted by a showing that it contains either (1) a 'false statement [made] knowingly and intentionally, or with reckless disregard for the truth' or (2) 'technically accurate statements' that 'have been rendered misleading by material omissions . . . .'" <u>United States v. Grant</u>, 218 F.3d 72, 77 (1st Cir. 2000) (citations omitted). Here, Torres failed to argue that the affidavit contains a false statement or has misleading statements. The affidavit does state that Torres claimed to be the owner of the cellphone. (Docket No. 91-7 at p. 5.) Agent Jiménez's affidavit also made clear that ATF agents know that people who illegally possess firearms "take photographs of themselves or induce other to photograph them, their associates and their property." <u>Id.</u> at p. 6. Agent Jiménez also stated that these individuals maintain "these records of communications and photographs in their possession and in cellular phones." (Docket No. 91-7 at p. 1.) Finally, the affidavit indicated that the ATF was already in lawful possession of the cellphone but seeking an

additional warrant out of an abundance of caution.  Id. at p. 6.

Accordingly, the magistrate judge properly found probable cause.

>    **3.   Particularity**

Torres's final argument is that the warrant lacks

particularity on three grounds:  (1) the warrant should have been

limited to evidence after his state conviction in August 2022 and

not to all records and information that relate to the possession

or acquisition of firearms or ammunition; (2) the warrant gives

the government free reign to seek older records unrelated to and

highly attenuated to the events on October 23, 2023; and (3) the

warrant fails to explain how the device's location relate to the

illegal firearm possession charges.  (Docket No. 91 at 17-18.)

The Fourth Amendment commands that no warrants

shall issue except those "particularly describing the place to be

searched, and the persons or things to be seized."  U.S. Const.

amend. IV.  This is known as the particularity requirement.  The

particularity requirement "makes general searches under . . .

[warrants] impossible and prevents the seizure of one thing under

a warrant describing another."  Marron v. United States, 275 U.S.

192, 196 (1927).  It "circumscribe[s] the discretion of the

executing officers" by "supply[ing] enough information to guide

and control the executing agent's judgment in selecting where to

search and what to seize."  United States v. Kuc, 737 F.3d 129,

133 (1st Cir. 2013); <u>United States v. Tiem Trinh</u>, 665 F.3d 1, 15 (1st Cir. 2011) (internal quotation marks omitted).

"While courts 'have struggled to adapt the Fourth Amendment search doctrines designed for physical spaces to digital contexts,' courts generally recognize that search warrants may authorize broad searches of electronic data on cellphones and computers, without violating the particularity requirement." <u>United States v. Jackson</u>, 642 F.Supp.3d 235, 239 (D.R.I. 2022) (citing <u>United States v. Reese</u>, No. 19-cr-257-NR, 2021 WL 4429429 at *4 (W.D. Pa. Sept. 27, 2021). This is so because courts are mindful that it is often impossible for law enforcement to detail precisely, beforehand, the evidence that will be found, and its location within the electronic device. <u>See</u> <u>United States v. Bishop</u>, 910 F.3d 335, 337-38 (7th Cir. 2018) ("[S]pecificity is a relative matter. A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation . . . . This warrant was as specific as circumstances allowed. The Constitution does not require more."); <u>United States v. Bass</u>, 785 F.3d 1043, 1050 (6th Cir. 2015) ("Here, the warrant authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs. At the time of

the seizure, however, the officers could not have known where this information was located in the phone or in what format.  Thus, the broad scope of the warrant was reasonable under the circumstances at that time.").

The warrant here satisfies the particularity requirement.  First, Torres's contention that any evidence of firearms or ammunitions found on the phone that is prior to August 2022 is outside the scope of the warrant is unpersuasive. As the government points out, Torres was charged with possession of a machinegun, which is a federal crime regardless of an individual's status as a convicted felon.  Therefore, the warrant was limited in scope to evidence pertaining to the crime listed in the warrant – possession of a machinegun.  See id.; see also United States v. Bishop, 910 F.3d 335, 337 (7th Cir. 2018) ("It is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation."); accord United States v. Castro, 881 F.3d 961, 965 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime.").

Additionally, the search does not need to be limited to October 23, 2023 – the date stated in the affidavit – if doing so would exclude relevant evidence.  For instance,

"evidence that dates from outside of the time period described in a warrant affidavit may be relevant to the activity within the time period."  See United States v. Smith, No. 19-324, 2021 WL 2982144, at *10 (D.D.C. July 15, 2021).

Finally, Torres's argument pertaining to the cellphone's location data is unpersuasive as well.  He states that the warrant does not explain how its location pertains to the illegal possession charges.  The warrant, however, explains that "the evidence on a device can also indicate who has used or controlled the device.  This 'user attribution' evidence is analogous to the search for 'indicia of occupancy' while executing a search warrant at a residence."  (Docket No. 91-7 at p. 11.) So, the warrant does explain why the cellphone's location is relevant.

Therefore, the warrant does not lack particularity.

### 4.   Consent Form

Finally, the government brings to the Court's attention that Torres signed a consent form, and he has not challenged the voluntariness of it.  (Docket No. 110 at p. 12.) Because Torres does not argue that his consent is involuntary, the Court will look at whether the scope of the search exceeded Torres's consent.

Criminal No. 23-410 (FAB)                                                16

       The scope of a search based on a defendant's consent
may not exceed the scope of that consent. <u>Florida v. Jimeno</u>, 500
U.S. 248, 251 (1991). "The scope of a consent search is defined
by the scope of actual consent in the same way that the scope of
a search based upon a search warrant is defined by the warrant."
<u>United States v. McBean</u>, 861 F.2d 1570, 1573 (11th Cir. 1988) (<u>per
curiam</u>). "When an individual gives a general statement of consent
without express limitations, the scope of a permissible search is
not limitless.  Rather, it is constrained by the bounds of
reasonableness:  what a police officer could reasonably interpret
the consent to encompass." <u>United States v. Harris</u>, 928 F.2d 1113,
1117 (11th Cir. 1991) (<u>quoting United States v. Strickland</u>, 902
F.2d 937, 941 (11th Cir. 1990)).  Here, the consent form generally
states that Torres consents to the search of a "Samsung cellphone."
(Docket No. 110-1.)  The form also states that "<u>any</u> evidence of a
crime found during the search can be seized and used against [him]
in any court of law or other proceeding."  <u>Id.</u>  Based on the
consent form, it is reasonable for the officer to interpret the
consent to the search to be broader than evidence solely related
to the October 23, 2023 shooting.

       In sum, while Torres does have standing to
challenge the search warrant on his cellphone, the warrant
satisfies the probable cause and particularity requirements.

Furthermore, Torres's own consent justifies the government's search. Therefore, Torres's request to suppress evidence obtained from the search of his cellphone is **DENIED.**

## III. Conclusion

For the reasons set forth above, Torres's motion to suppress and his request for an evidentiary hearing are **DENIED.** (Docket No. 91.)

Trial is set to commence on **July 21, 2025 at 9:00 a.m.** before the undersigned in a courtroom to be determined in the Old San Juan Courthouse.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 20, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE